**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERARDO G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 22-1529 (SDW) <br><br> **OPINION** <br><br> January 4, 2023 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Gerardo G.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Kurt G. Ehrman's ("ALJ Ehrman") denial of Plaintiff's claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the record is complete and that ALJ Ehrman's factual findings are supported by substantial evidence and adequately explained, and his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

     A.     **Procedural History**

On February 21, 2020, Plaintiff applied for a period of disability, DIB, and SSI. (D.E. 5 (Administrative Record ("R.")) at 217–18, 221–28.) He alleged disability beginning on February 9, 2020, due to a traumatic brain injury ("TBI"), skull fracture, craniotomy/cranioplasty, near amputation of his left hand, right elbow fracture, and left mandible fracture. (R. 58, 254.) The claims were denied initially on August 21, 2020, and upon reconsideration on November 16, 2020. (R. 58–126.) ALJ Ehrman held an administrative hearing on July 22, 2021, and issued a written decision on August 6, 2021, finding that Plaintiff was not disabled. (R. 12–23, 29–57.) The Appeals Council denied review on February 7, 2022 (R. 1–6), making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 404.900;[2] 42 U.S.C. § 405(g). Plaintiff then filed the instant appeal in this Court, and the parties completed briefing. (D.E. 1, 14, 15, 19.)

     B.     **Factual History**

Plaintiff is 45 years old and alleges that he became disabled on February 9, 2020 (the "alleged onset date"), at 42 years old. (R. 31, 34.) He has a high school education and has previously worked as a HVAC installer and construction worker. (R. 37–40, 255.) However, he stopped working approximately a year before the alleged onset date due to a back injury in the spring of 2019, for which he received worker's compensation benefits for several months. (R. 229, 254.) The following is a summary of the relevant medical evidence in the record.

<u>Musculoskeletal Impairments</u>

On February 9, 2020, Plaintiff was attacked by an assailant wielding a machete and

---

[2] This opinion cites only the regulations addressing DIB found at 20 C.F.R § 404.1500 *et seq.*, and not the parallel regulations addressing SSI found at 20 C.F.R. § 416.900 *et seq.*, because they are "identical" for present purposes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n.3 (3d Cir. 2005).

brought to a hospital where he received treatment and underwent several surgeries over the course of eleven days. (R. 323–25, 345–49.) Hospital treatment notes record that his left wrist was "nearly severed"; his right elbow, skull, jaw, and several teeth were fractured; he sustained a traumatic brain injury; and he had severe lacerations on his face, head, and upper extremities. (R. 327, 333, 345–49.)

In March 2020, Plaintiff was seen by neurologist Dr. Adam Befeler for a follow-up appointment. (R. 427.) Plaintiff's father reported that Plaintiff had mild issues with his speech and counting, and Plaintiff reported pain in his upper body. (R. 427–28.) Upon examination of Plaintiff and a computed tomography ("CT") scan of his head, Dr. Befeler found Plaintiff was doing well and had no neurological changes. (R. 431.) He had reduced strength in both arms but no issues with his lower body. (R. 428.) Dr. Befeler noted that Plaintiff "denie[d] any significant headaches" but also listed "migraine headache" as one of Plaintiff's symptoms. (R. 427, 249.)

At an orthopedics follow-up with Dr. Jorge Rodriguez in March 2020, Plaintiff reported weakness and pain in his arms and left hand but no numbness. (R. 456–61.) By June 2020, Dr. Rodriguez found Plaintiff's "strength [was] coming back," and he was healing well from his surgeries but continued to have weakness around his left hand's ulnar nerve. (R. 473–76.)

From June to September 2020, Plaintiff went to occupational therapist Michael Saraceno to improve his strength and motor skills. (R. 510–28, 544–76, 603–32). On September 17, 2020, Plaintiff still had numbness in two fingers of his left hand and a "lack of [an] ulnar grip." (R. 614.) However, by the time he was discharged from that therapy on September 28, 2020, he had made "excellent progress" and achieved or exceeded all goals: he could grip 40 pounds with his left hand and 45 with his right, bear 60 pounds on his left palm and 100 with his right, and curl 5 pounds with both. (R. 624–25, 627.)

In October 2020, Plaintiff was examined by neurologist Dr. Mary Shriver, who found his lacerations had "healed"; his muscle strength was 5/5 in both upper extremities, including his wrist and hand muscles; and he had a "decrease in sensation" in the left hand and left scalp. (R. 640–41.) Dr. Shriver also noted that Plaintiff was referred to her for headaches which had lessened to "once per week." (R. 640.)

In May 2021, Plaintiff visited orthopedist Dr. Ioannis Pappou reporting that he had numbness on the dorsum of his left hand, and pain in his right shoulder when moving it. (R. 649.) Upon examination, Dr. Pappou assessed Plaintiff to have carpal tunnel syndrome in his left hand due to injuries to his nerve branches from the machete attack. (R. 650.) Dr. Pappou referred Plaintiff for nerve conduction velocity ("NCV") studies, electromyography ("EMG"), and magnetic resonance imaging ("MRI") to further examine the issues Plaintiff reported in his left hand and right shoulder. (R. 651.) In June 2021, Dr. Shriver performed EMG and NCV studies on both of Plaintiff's upper extremities and found normal results except that some sensory potential in his left radial and ulnar nerves was absent, which was "compatible with sensory nerve injuries at the level of the left wrist." (R. 684.) A radiologist examining a July 2021 MRI of Plaintiff's right shoulder found some "mild" degeneration of parts of the shoulder joints but "normal signal intensity and bulk" in the rotator cuff. (R. 693.)

Plaintiff also visited a primary care provider, Keyshla Moreno, APRN, several times throughout this period, beginning with a physical in July 2020. (R. 530.) Her treatment notes generally did not record any relevant symptoms except headaches and some signs of depression, which he took medication for—at every visit, Plaintiff had normal movement of all extremities and no difficulty walking, and he only reported numbness in his left hand at his last of several visits, in May 2021. (R. 530–34, 587–92, 653–57, 659–663, 664–68.) In June 2021, Ms. Moreno

4

filled out a Physical Medical Source Statement, opining that Plaintiff had numerous severe physical limitations that would limit his ability to work.  (R. 681–83.)

### Mental Impairments

Treatment notes from Plaintiff's initial hospitalization in 2020 and from his primary care provider in 2021 show that he was taking an antidepressant, Sertraline (a.k.a. Zoloft), and Ms. Moreno noted in February 2021 that his depression was "well controlled" with medication.  (R. 349, 659, 667.)  In May 2021, Plaintiff reported to Ms. Moreno that he was "stressed" and wanted to see a counselor, and he was referred for mental health counseling.  (R. 653, 657.)  However, there is no record of Plaintiff ever being treated by a mental health specialist, and his physical exams did not report any psychological or neurological symptoms besides depression and stress.  (*See* R. 530–34, 581, 587–92, 653–57, 659–663, 664–685.)

At the behest of the agency, Plaintiff's mental status was evaluated by psychologist Billie Jo Hatton, Ph.D., in August 2020.  (R. 580–82.)  Dr. Hatton found that Plaintiff had mild depression secondary to his physical injuries, which he was not taking medication for at that time, but he did not have any significant neurocognitive impairments: he had no difficulties with attention, no problems with expressive language skills, no significant memory problems, and that there was "no evidence of cognitive slowing or word finding difficulties."  (R. 582.)

### State Agency Physician and Psychologist Opinions

On August 5, 2020, state agency physician Audrey Wooten, M.D., reviewed Plaintiff's medical records and opined that despite some moderate mental and physical limitations, Plaintiff could perform light work with only occasional use of the left hand for handling, fingering, and feeling.  (R. 66–72.)  Dr. Wooten found no limitations in Plaintiff's right arm and no reaching limitations in either arm.  (R. 67.)  On November 16, 2020, on reconsideration, state agency

physician Moses Izuegbu, M.D., reviewed the record and agreed with Dr. Wooten's RFC assessment. (R. 77–98, 99–121.)[3]

On August 20, 2020, state agency psychologist Jeffrey Prickett, Psy.D., reviewed Plaintiff's medical records and found that Plaintiff had mild limitations in interacting with others and moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself. (R. 64–65.) Accordingly, Dr. Prickett opined that Plaintiff had the mental capacity to understand, remember, and carry out simple instructions, and to perform routine tasks. (R. 69–71.) On November 16, 2020, on reconsideration, state agency psychologist George Grubbs, Psy.D., reviewed the record and agreed with Dr. Prickett's opinion. (R. 85–88, 93–96.)

C. **Hearing Testimony**

At the administrative hearing on July 22, 2021, Plaintiff appeared with his attorney and testified before ALJ Ehrman. (R. 29–57.) Before proceeding with the hearing, the ALJ asked if "the record [was] complete" and Plaintiff's counsel confirmed that it was. (R. 32.)

When asked what lingering physical symptoms he has from the attack, Plaintiff testified that he has migraines three to four times a week, headaches, and nerve pain in his arms, and that he takes pain medication daily. (R. 41–45.) He reported that his left hand is "completely numb," making him unable to grab anything or hold any weight with that hand. (R. 46–49.) He can carry weight with his right arm and hand, but only when the arm is straight; if he bends at the elbow while holding weight with his right hand, pain in the right elbow causes his right hand to lock up,

---

[3] Dr. Izuegbu's report states that Plaintiff has a maximum capability for sedentary work, while Dr. Wooten found he could do light work. (R. 72, 97.) However, Dr. Izuegbu agreed with all of Dr. Wooten's relevant medical findings regarding Plaintiff's exertional limitations—including that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and walk or stand for six hours in a work day—so his opinion is consistent with a finding that Plaintiff can do "light work" as defined in 20 C.F.R. § 404.1567(b). (R. 89–92.) *See* 20 C.F.R. § 404.1567(a)–(b).

so that he drops what he is holding. (R. 49.) When asked whether he had any cognitive issues, such as difficulties with concentration or memory, he reported memory issues especially with numbers and dates. (R. 49–50.) He also reported difficulty articulating what he wanted to say. (R. 50–51.)

Kim Williford ("VE Williford"), an impartial vocational expert, also testified at the hearing. (R. 29, 53–56.) VE Williford testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Ehrman, could not perform Plaintiff's previous work, but could perform other jobs that exist in significant numbers in the national economy, including merchandise marker, office helper, and order caller. (R. 55.)

## II.   LEGAL STANDARD

### A.   Standard of Review

This Court exercises plenary review of the legal issues decided by the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. 42 U.S.C. § 405(g) ("The findings of the [agency] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). This Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler,* 667 F.3d at 359. If the ALJ's decision is supported by substantial evidence, sufficiently explained, and not based on legal error, this Court may not set aside the decision "even if [this Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *see* 42 U.S.C. § 405(b)(1), (g).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quotation marks omitted). It

7

is "a term of art used throughout administrative law" and notwithstanding "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* (quotation marks omitted). "It is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610–11 (3d Cir. 2014) (quotation marks omitted)). However, a "single piece of evidence 'will not satisfy the substantiality test if the Commissioner ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

To allow for meaningful judicial review, an ALJ must adequately consider and assess the persuasiveness of relevant medical evidence, and explain the reasons for his decision, on the record. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.1520c; *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).[4] "Where there is conflicting probative evidence," there is "a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions," and failure to provide that explanation warrants remand. *Fargnoli*, 247 F.3d at 42. However, "the ALJ is free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak*, 777 F.3d at 614.

---

[4] Under regulations effective March 27, 2017, the ALJ is no longer required to state what "weight" he gives any piece of evidence or to give the treating physician's opinion controlling weight. *See* 20 C.F.R. § 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017). Instead, the ALJ must "articulate . . . how persuasive" it finds each medical source's opinion and any prior administrative medical findings. 20 C.F.R. § 404.1520c(b). The ALJ is not required to discuss the persuasiveness of nonmedical evidence, or to analyze evidence that is "inherently neither valuable nor persuasive," including statements on issues reserved for the ALJ to decide, such as whether a claimant is or is not able to work. *Id*. §§ 404.1520b(c), 404.1520c(d).

B.   **The Five-Step Disability Test**

A claimant will be considered disabled under the Act if the claimant is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A).[5] The impairment must be severe enough to render the claimant "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). The Commissioner must consider "all evidence" in the record, but the claimant's statements alone are insufficient to establish a disability; there must also be objective "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques" showing an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id*. § 423(d)(5)(A)–(B).

To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019). "The burden of proof is on the claimant at all steps except step five, where the burden is on the [ALJ]." *Hess*, 931 F.3d at 201. If the ALJ determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

Step one requires the ALJ to consider the claimant's work activity, if any, and determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76. SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." *Id*. § 404.1510. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits,

---

[5] The statutory definition of disability is the same for both DIB and SSI benefits, so this opinion cites only the statutes addressing DIB. *See* 42 U.S.C. § 423(d) (DIB); *id*. § 1381c(a)(3) (SSI); *Rutherford*, 399 F.3d at 551 n.3.

9

regardless of the severity of the claimant's impairments. *See id*. § 404.1520(a)(4)(i). If the claimant is not engaging in SGA, the ALJ proceeds to step two.

At step two, the ALJ determines whether the claimant suffers from a "severe" and "medically determinable" impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. *Id*. §§ 404.1509, 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" only if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Any impairment must be established by objective medical evidence and not the claimant's statements alone. *Id*. § 420.1521; *see* 42 U.S.C. § 423(d)(5)(A). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R § 404.1520(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three.

At step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If any of the claimant's impairments or a combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. *Id*. § 404.1520(d). If not, the ALJ proceeds to the next step.

Before undergoing the analysis at step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). *Id*. §§ 404.1520(a)(4), (e). RFC is the "most [the claimant] can still do despite [his] limitations" in terms of meeting the "physical, mental, sensory, and other requirements of work." *Id*. § 404.1545(a)(1), (a)(4). The ALJ considers all impairments in this analysis, not just those deemed severe. *Id*. § 404.1545(a)(2).

At step four, the ALJ determines whether the claimant can still do his past relevant work, by comparing his RFC to the "physical and mental demands" of that work. 20 C.F.R. § 404.1520(f); *see* 404.1560(b)(1) (defining past relevant work). If the claimant can do that kind of work, he is not disabled under the Act. *Id*. §§ 404.1520(a)(4)(iv), (f). If not, or if there is insufficient evidence about the claimant's past relevant work to make a finding at step four, the ALJ proceeds to the fifth and final step. *Id*. §§ 404.1520(a)(4), (f), (h).

At step five, the ALJ must determine whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v), (g). Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." *Id*. § 404.1560(c)(2). If the claimant is unable to make an adjustment to other work, he or she is disabled. *Id*. § 404.1520(a)(4)(v).

### III.    DISCUSSION

#### A.    The ALJ's Decision

On August 6, 2021, ALJ Ehrman issued a decision concluding that Plaintiff was not disabled from February 9, 2020, the alleged onset date, through the date of the decision. (R. 12–23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 14.) At step two, he found that Plaintiff had the following severe impairments: (1) a traumatic brain injury ("TBI"); (2) a "skull fracture with resolution of the subdural hematoma with residual mild neurocognitive disorder"; (3) "near amputation of the left wrist with multiple carpal bone fractures"; (4) a left mandible fracture; (5) a right elbow fracture;

(6) lacerations to his right upper extremity, face, and scalp; (7) right shoulder disorder; (8) mild aphasia; and (9) depression. (R. 14–15.) The ALJ also noted the operations Plaintiff had undergone to repair the fractures on his left hand, jaw, and right elbow, and the machete lacerations. (*Id*.) At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 16–18.)[6]

> Assessing Plaintiff's RFC prior to step four, the ALJ found that Plaintiff could
>
> perform light work . . . except the claimant can occasionally lift 20 pounds, frequently lift/carry 10 pounds, stand or walk 6 hours, sit 6 hours with normal breaks in an 8 hour workday; [can] occasionally use the left upper extremity for reaching, handling, fingering and feeling; must avoid even mod[erate] exposure to hazards; can perform simple, routine, tasks and instructions; [and can do] no more than occasional overhead reaching with the right dominant hand.

(R. 17.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as an HVAC installer and construction worker. (R. 21.) At step five, the ALJ relied on VE Williford's testimony and information in the Dictionary of Occupational Titles ("DOT") to find that, with this RFC, Plaintiff could perform other jobs available in the national economy, such as merchandise marker, office helper, and order caller. (R. 22.) ALJ Ehrman therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 23.)

**B.     Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (D.E. 14 at 16–37.) He raises three principal arguments: first, that the administrative record is incomplete; second, that the ALJ did not give due consideration to Ms. Moreno's medical opinion and Plaintiff's subjective complaints in making the RFC assessment; and third, that the ALJ erred at step five by finding he could perform jobs requiring manipulative capabilities that exceeded his

---

[6] Plaintiff does not challenge the ALJ's listings analysis, so it is not discussed in this opinion.

RFC. (*Id.*)  This Court considers the arguments in turn and finds each unpersuasive.

### 1. Completeness of the Record

Plaintiff argues that the administrative record is incomplete, requiring remand.  (D.E. 14 at 16–20.)  The record filed by the Commissioner must "include[e] the evidence upon which the findings and decision complained of are based."  42 U.S.C. § 405(g); *see also* 20 C.F.R. § 404.951(b) (stating that all "evidence upon which the [ALJ] relies for the decision must be contained in the record, either directly or by appropriate reference").  Here, the ALJ determined that Plaintiff had a "moderate limitation" in adapting and managing himself, and "some cognitive deficits" such as "mild aphasia," relying in part on a statement by Plaintiff's father that he could "tend to his personal needs." (R. 15–17, 21.)  Plaintiff asserts that the ALJ, through reference to the agency's reconsideration decision, relied on the following documents that are not in the record: (1) a report on Plaintiff's activities of daily living ("ADL") by his father dated July 20, 2020, (2) unrecorded telephone conversations, and (3) a Function Report-Adult. (D.E. 14 at 16–20.)

This Court finds that all of the evidence relied on by the ALJ in assessing Plaintiff's cognitive functioning is included in the record.  The statements by Plaintiff's father are found in notes summarizing a phone call between disability adjudicator Terri Leviner and Plaintiff's father on August 20, 2020. (R. 62.)  These notes were referenced in the agency's reconsideration decisions with an apparent date of July 20, 2020—the date that Leviner spoke to Plaintiff's mother—but there is no reason to believe a statement by Plaintiff's father on July 20 is missing from the record. (*See* R. 62, 65, 84, 87, 107, 110.)[7]  Plaintiff's testimony describing his only

---

[7] Plaintiff correctly notes that the "ALJ did not articulate any statements or observations made by [Plaintiff's] mother in his decision." (D.E. 14 at 19.)  To the extent Plaintiff argues that this evidence should have been referenced in the ALJ's decision, that argument is without merit, because his mother was not a medical source. *See* 20 C.F.R. § 404.1520c(d) (stating that the agency is "not required to articulate how [it] considered evidence from nonmedical

13

cognitive limitations as ones relating to memory and word recall is also in the record. (R. 49–51.) Plaintiff cites no authority for his claim that every exhibit file contains a "Function Report-Adult" but, even if that were true, the omission of such a report in this case does not require remand where the ALJ did not rely on such a report in his decision. (D.E. 14 at 18.) *See* 20 C.F.R. § 404.951(b). Plaintiff's former counsel also confirmed at the hearing before the ALJ that "the record [was] complete" with 11 exhibits in section E, as appear in the record before this Court, which casts further doubt on his claim that there are any documents missing from section E of the present record. (R. 32; D.E. 14 at 16.)

### 2. Evaluation of Ms. Moreno's Opinion and Plaintiff's Testimony

Plaintiff argues that, in making the RFC determination, the ALJ "improperly reject[ed]" the medical findings and opinions of Keyshla Moreno, APRN, and did not give due weight to Plaintiff's testimony regarding his physical and mental impairments and pain. (D.E. 14 at 20–30, 32–35.) Plaintiff asserts that if this evidence had been credited, or given greater consideration, his RFC would have been more limited. (*Id*. at 21.) However, the ALJ did consider this evidence and adequately explained his reasons for finding it not persuasive, and the ALJ's RFC finding is supported by substantial evidence.

An ALJ must articulate how persuasive he finds each medical opinion, but he is not required to credit any opinion so long as he adequately explains his reasons for rejecting it. 20 C.F.R. § 404.1520c; *Zirnsak*, 777 F.3d at 614; *see also Chandler*, 667 F.3d at 361 ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determination."). Here, the ALJ adequately explained his reasons for finding

---

sources"). Moreover, the mother's statements were similar to Plaintiff's and his father's, and "it is harmless error for an ALJ to omit statements that are merely duplicative of the Plaintiff's own claims." *Brando v. Colvin*, 2017 WL 2364194, at *22 (D.N.J. May 31, 2017) (citing *Crosby v. Barnhart*, 98 F. App'x. 923, 926 (3d Cir. 2004).

Ms. Moreno's opinion "not persuasive." (R. 20–21.) The ALJ correctly noted that Ms. Moreno's opinion is "not consistent with objective record evidence" because it states that Plaintiff had postural limitations, when other record evidence shows Plaintiff's lower extremities have normal functioning. (*Id*.) Ms. Moreno's opinion states that Plaintiff has extreme limitations to his lower body—that he can only walk for one to two blocks at a time "without rest or severe pain," he can sit for a maximum of 45 minutes at a time and stand for 30, and he can sit and stand for only two hours per day. (R 681–82.) This is contrary to the rest of the record, including Plaintiff's testimony and Ms. Moreno's own treatment records, which report no impairments affecting Plaintiff's lower body. (*See* R. 34–52, 428, 661–62.)

With regard to upper body impairments, the ALJ agreed with Ms. Moreno that Plaintiff had some limitations but disagreed that they were as severe as she opined, citing other record evidence of objective physical exams that supported his findings. (R. 21.) The ALJ's assessment of Plaintiff's upper body impairments and functioning is amply supported by record evidence, including Ms. Moreno's own assessment in February 2021 that—notwithstanding Plaintiff's reports of some pain, numbness, and weakness—Plaintiff had normal motor strength, muscle tone, and power in all four limbs. (R. 653, 662.)

An ALJ is also not required to credit a claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms, though they must be considered. *See* Social Security Ruling ("SSR") 16-3p (stating that the ALJ must consider "the entire record" in making this evaluation, including the individual's statements). Congress has specified that a claimant's "statement as to pain or other symptoms shall not alone be conclusive evidence of disability"—there must be "objective medical evidence" showing the existence of a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged" for a claimant to

receive disability benefits. 42 U.S.C. § 423(d)(5)(A).[8] An ALJ must generally give "serious consideration" to a claimant's complaints of pain, and "great weight" to complaints of pain if they are supported by medical evidence. *Gross v. Comm'r Soc. Sec.*, 653 F. App'x 116, 119–20 (3d Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1067–68 (3d Cir. 1993). However, an ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his pain and other symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles*, 229 F. App'x at 147 (citations omitted). It is the ALJ's responsibility, as factfinder, "to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it," and the ALJ may reasonably find a claimant is exaggerating where his testimony is contradicted by other record evidence. *Hartranft*, 181 F.3d at 362. Where there is conflicting evidence in the record, the ALJ "may or may not" accept it as credible, or can "choose to credit portions" of it, so long as the ALJ explains his reasons for doing so and those reasons are supported by the record. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Here, the ALJ gave due consideration to Plaintiff's subjective complaints and adequately explained his reasons for not crediting them entirely, and the ALJ's findings are supported by medical evidence in the record. (R. 19.) Plaintiff testified that his left hand was "completely numb" and he could not use it to grip or lift anything. (R. 48–49.) However, his medical records show numbness in only part of his left hand, at most, and that he was able to grip 40 pounds with his left hand at occupational therapy in September 2020. (*See* R. 614, 624, 649, 684.) Dr. Shriver's nerve conduction study in June 2021 showed that only "some" sensation in *part* of

---

[8] This statute appears to overrule Third Circuit precedent holding that "a claimant's subjective complaints of pain may, standing alone, establish a finding of total disability." *Carter v. R.R. Ret. Bd.*, 834 F.2d 62, 65 (3d Cir. 1987).

Plaintiff's left hand was absent. (R. 684.) Plaintiff also testified that pain in his right arm made him drop whatever he was holding, and that he cannot carry weight with his arms bent. (R. 49.) However, by the time he completed occupational therapy, he was able to grip 45 pounds with his right arm, curl weights, and repeatedly carry a 20-pound crate a distance of 10 feet. (R. 621, 624–26.) Moreover, the June 2021 EMG of his right upper extremity was normal in all respects, and the July 2021 MRI of his shoulder found only mild degeneration of the joints. (R. 684, 693.) Plaintiff cites to older record evidence that showed more severe impairment in his upper extremities shortly after the attack, but the ALJ reasonably gave more weight to more recent evidence demonstrating Plaintiff's improved condition after treatment and therapy. This Court will not reweigh the evidence or impose its own factual determinations. *See Chandler*, 667 F.3d at 359.

The ALJ also gave due consideration to Plaintiff's subjective complaints and statements about his mental impairments and pain in assessing his RFC. (R. 15–21.) The ALJ explained that the RFC was limited to "simple tasks to account for the claimant's reported cognitive deficits and mild [psychological issues]," including aphasia, depression, stress, and other moderate limitations. (R. 20.) These findings are supported by record evidence, especially Dr. Hatton's psychological evaluation concluding that Plaintiff had no significant neurocognitive impairments. (R. 582.) The task of this Court is not to determine whether the ALJ could have reached a different outcome, but whether a reasonable person could look at the evidence and reach the same conclusion as the ALJ. *See Biestek*, 139 S. Ct. at 1154. The ALJ's evaluation of Plaintiff's subjective complaints was reasonable in view of the evidence, and the fact that Ms. Moreno's opinion and Plaintiff's statements might have led another ALJ to find a more limited RFC does not provide a basis for remand or reversal.

### 3. Evaluation of Evidence at Step Five

When determining whether a claimant can find other work in the national economy, at step five of the sequential analysis, the ALJ may take administrative notice of job information from the DOT and may also rely on a vocational expert ("VE") to determine the functional requirements of specific occupations. 20 C.F.R. § 404.1566(d)–(e). In order to meet the ALJ's burden of establishing that a claimant can find work despite his impairments, and to provide the claimant due notice, the ALJ must rely on "the testimony of a vocational expert or other similar evidence, such as a learned treatise." *Sykes*, 228 F.3d 259, 265, 273 & n.6 (3d Cir. 2000) (finding that an ALJ did not meet his burden of proof where his conclusion that loss of vision in one eye did not significantly reduce the number of available jobs was based only on his personal opinion and that of a doctor who was not a vocational expert). An ALJ must identify and "elicit a reasonable explanation for" any conflicts between the DOT information and a VE's testimony and must explain in his decision how the conflict was resolved. SSR 00-4p.

Plaintiff argues that the ALJ did not comply with SSR 004-p or otherwise meet his burden of proof at step five because he did not sufficiently resolve the conflict between Plaintiff's RFC and the description of the three proffered jobs in the DOT. (D.E. 14 at 30–32, 35–37.) The ALJ assessed Plaintiff's RFC to be limited to only "occasionally us[ing] the left upper extremity for reaching, handling, fingering, and feeling" and Plaintiff contends that all three jobs identified by VE Williford required him to do so "frequently" and bilaterally. (R. 17; D.E. 14 at 30–33.) Plaintiff is correct that the DOT descriptions require doing these actions frequently, but he is not correct that they necessarily require doing so bilaterally, and he cites no authority saying as much. (D.E. 14 at 42, 45; D.E. 19 at 18.) As VE Williford confirmed at the hearing, the DOT is silent as to whether these actions must be done frequently by *both* hands. (R. 55.) However, VE

18

Williford opined that, based on her own observation of these jobs, Plaintiff's greater limitations in his left (non-dominant) hand would not prevent him from performing these jobs. (R. 55–56.)

The ALJ's first hypothetical to VE Williford correctly reflected his RFC—including the relatively greater limitations to his left upper extremity—and the VE's testimony, together with the DOT descriptions, was substantial evidence to support the ALJ's conclusion that Plaintiff could perform jobs in the national economy given his RFC. (R. 53–54.) *See* 20 C.F.R. § 404.1566(d)–(e); *Sykes*, 228 F.3d at 273. The ALJ also complied with SSR 004-p by affirmatively asking VE Williford about the apparent conflict between the DOT description and Plaintiff's RFC, and by explaining in his decision that VE Williford's testimony was "consistent with the [DOT] and any [in]consistencies are based upon the [VE's] training, education, and experience in the field observing how those jobs are actually performed today." (R. 22–23.) Thus, the ALJ's analysis at step five does not warrant reversal or remand.

## IV.　CONCLUSION

For the foregoing reasons, this Court finds that ALJ Ehrman's factual findings were supported by substantial evidence in the record and that his legal determinations were correct. The Commissioner's decision is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*  
**SUSAN D. WIGENTON**  
**UNITED STATES DISTRICT JUDGE**

Orig:　Clerk  
cc:　　Parties